# SheppardMullin

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

415.774.2905 direct
ssacks@sheppardmullin.com

May 3, 2016

File Number: 0A22-198547

**VIA ELECTRONIC MAIL**

Judge M. Elaine Hammond
c/o Millie McGowan
E-Mail: millie_mcgowan@canb.uscourts.gov

Re: <u>In re Robert Brower, Sr. (Case No. 15-50801)/MUFG Union Bank, N.A. v. Brower (Adv. Proc. No. 15-05119) – Summary of Current Discovery Dispute with Great American Wineries, Inc.</u>

Dear Judge Hammond:

We are counsel for creditor/plaintiff MUFG Union Bank, N.A. (the "Bank") in the above-referenced adversary proceeding. We write to request your help in resolving a discovery dispute concerning third party Great American Wineries, Inc.'s ("Great American") refusal to comply with the Bank's document subpoena (the "Subpoena"). Great American served responses to the Subpoena on February 18, but unfortunately they consisted entirely of objections. Great American is another company in Debtor's constellation of related businesses and is a statutory insider, as Debtor was its president at the time of his bankruptcy filing and for a period thereafter.

After receiving Great American's objections, the Bank's counsel was unable to make any significant headway in its subsequent meet and confer discussions with Great American's counsel. Accordingly, on March 17, 2016, the Bank submitted its letter brief concerning the dispute. The Court had presided over a lengthy hearing that same day regarding the Bank's motion to compel compliance with subpoenas in the main bankruptcy case (concerning another of Debtor's companies, Coastal Cypress Corporation, and its accountants and counsel, related to Debtor's motion to sell Debtor's shares in Coastal Cypress) and regarding Debtor's failure to comply with the Bank's Interrogatories and Requests for Production. Following that hearing, the Court requested "that [the Bank and Great American] listen to that hearing and then engage in a further meet and confer" before seeking the Court's assistance in resolving the dispute.

After further meet and confer efforts, Great American furnished supplemental responses to the Subpoena that resolved the parties' disputes regarding most of the 33 Requests for Production, subject to certain supplemental responses from Great American that we understand are forthcoming. However, as further specified below, the parties remain at an impasse concerning Request Nos. 3, 8-10, 16-18, and 29. The Bank requests that the Court intercede and order Great American to produce the documents responsive to these Requests in Great American's possession, custody, or control within ten days.

**Background**

Debtor filed this Chapter 11 case in March 2015 for the purpose of avoiding an attachment lien the Bank had obtained against Debtor in a guaranty enforcement action in state court arising from the Bank's $4.85 million loan to Chateau Julien, Inc. (the "Chateau Julien Loan"), an entity Debtor ran for many years until he transferred its business to Great American. Debtor claims he has never actually been an owner of Chateau Julien, but until he filed bankruptcy had always described himself as owner and/or proprietor. Debtor also claims not to own any interest in Great American and has produced a stock register showing he transferred his shares of Great American stock to his son when Bobby Brower, Jr. was an infant. Debtor was the President of Great American from 1982 at least through May 2014, and in the SOFA filed under penalty of perjury in this bankruptcy case, he said he was still Great American's president in March 2015. In Great American's filings with the State of California, Debtor was listed as the Chief Financial Officer as of August 7, 2015.

The Bank filed this adversary proceeding seeking a judgment (a) determining that the full amount of Debtor's debt under the aforementioned guaranty is non-dischargeable and/or (b) denying Debtor's discharge in this bankruptcy case. The Bank alleges that Debtor intentionally misled the Bank concerning his finances/assets in connection with refinancing and extending the Chateau Julien Loan. Further, Debtor destroyed Chateau Julien's books and records, part of the Bank's collateral, so that the Bank had no means of determining the nature and extent of the dealings among Debtor's intertwined enterprises.

Great American was a key part of Debtor's deception. In obtaining and renewing the loan from the Bank, Debtor represented Chateau Julien as a fully-integrated winery, producing and bottling its own wine (under the direction of long-time Chateau Julien winemaker, Bill Anderson), selling bottled wine (through both retail and wholesale distribution) under its own name, buying grapes and bulk wine, and hosting special events at its "wine estate." That was the business to which the Bank thought it was lending $4.85 million. Indeed, when Debtor filed this bankruptcy case in March 2015, he filed an amended SOFA in which he listed the businesses he was affiliated with, he described Chateau Julien as being in the business of wine production and Great American as doing "wine and spirits marketing and sales."

Debtor now asserts that Great American, not Chateau Julien, made wine and that Chateau Julien never owned any of the brands it sold. Instead, Chateau Julien was the sole customer for wine made by Great American. Debtor contends that even the name "Chateau Julien" is owned by Great American and was used by Chateau Julien only with Great American's permission. One way or the other, it is obvious now that Chateau Julien and Great American are closely related, with Debtor at the hub of their relationship.

Once the Bank declined to renew Chateau Julien's loan and sought repayment, Debtor merely moved the Chateau Julien operations over to Great American. Debtor previously had told the Bank and the public that Bill Anderson was Chateau Julien's winemaker—he is now Great American's winemaker. Great American took over the wholesale distribution business that Chateau Julien had conducted, obtaining a transfer of its liquor licenses.

In sum, Debtor misrepresented Chateau Julien's business operations and assets (as well as his own finances) in order to secure a loan from the Bank. Then, when it came time for Chateau Julien to re-pay the loan, Debtor smuggled everything of value out of Chateau Julien and into Great American and declared personal bankruptcy in order to avoid his guarantor obligations. Debtor's goal, of course, is to emerge from bankruptcy debt free and with Great American completely unscathed. The Bank must be allowed to pursue broad discovery concerning this scheme in support of its adversary claims.

**Great American's Failure to Comply with the Subpoena**

Request Nos. 3, 8-10, 16-18, and 29 are still in dispute. The following is a brief summary of each Request and Great American's response to date:

- Request No. 3: "All DOCUMENTS reflecting any of [Great American's] director meetings during the period from January 1, 2004 through the present, including meeting minutes. Great American has responded only with boilerplate objections (e.g., relevance, overbreadth, and confidentiality/trade secrets) and has refused to produce any responsive documents.
- Request Nos. 8 and 9: "All DOCUMENTS reflecting any contracts or agreements between [Great American] and any entity in which [Debtor or Debtor's wife] has any direct or indirect interest whether as an owner, shareholder, member, officer, director, employee, consultant, or agent." Great American's initial responses to these requests professed ignorance as to the meaning of the phrase "any entity in which [Debtor or Debtor's wife] has any direct or indirect interest…" That is hardly a believable objection given that Debtor was Great American's President for more than 30 years, thereafter Debtor's son has been Great American's President, and Debtor's wife has been an officer of Great American for its entire existence. Great American's supplemental response stated that it would produce only those responsive documents reflecting contracts and agreements with American Commercial Properties, Chateau Julien, Inc., and Coastal Cypress Corporation (i.e., Debtor's companies that the Bank already knows about). This evasive response suggests there are other, currently unknown entities in which Debtor and/or his wife have an interest that Great American is seeking to shield from discovery.
- Request No. 10: "All DOCUMENTS reflecting any COMMUNICATIONS between [Great American] (including YOUR agents, officers, directors, employees or other acting on [Great American's] behalf) and [Debtor] from January 1, 2004 through the present." Great American has responded only with boilerplate objections (e.g., relevance, overbreadth, and confidentiality/trade secrets) and has refused to produce any responsive documents. In an effort to compromise during meet and confer discussions, the Bank offered to narrow the time period of this request, but Great American continues to refuse to produce any responsive documents.
- Request Nos. 16-17: "All DOCUMENTS reflecting or relating to transactions, payments, loans, and/or transfers or relinquishments of assets between [Great American] and any sole proprietorship, general partnership, limited partnership, corporation, limited liability company or other entity that [Debtor or Debtor's wife] is or (or was, at any time from January 1, 2004

Judge Hammond
May 3, 2016
Page 4

- to the present) an employee, consultant, officer or director of, is (or was, at any time from January 1, 204 to the present) an agent for service of process of, or in which [Debtor or Debtor's wife] has (or had, at any time from January 1, 2004 to the present] a direct or indirect ownership interest."  Great American's responses to these Requests are problematic for the same reason as the responses to Request Nos. 8-9; Great American has merely stated that it will produce responsive documents as to American Commercial Properties, Chateau Julien, Inc., and Coastal Cypress Corporation (i.e., Debtor's companies that the Bank already knows about).  Again, this evasive response suggests there are other, currently unknown entities in which Debtor and/or his wife have an interest that Great American is seeking to shield from discovery.
- Request No. 18: "All DOCUMENTS reflecting [Great American's] assets at any time from January 1, 2004 through the present including, but not limited to financial statements, accounting documents, and bank statements."  Great American has responded only with boilerplate objections (e.g., relevance, overbreadth, and confidentiality/trade secrets) and has refused to produce any responsive documents.  At the time of Debtor's bankruptcy filing, he was the President of Great American, rendering Great American a statutory insider. As the Court observed in connection with the Bank's financial discovery propounded to one of Debtor's other companies, Coastal Cypress Corporation, a statutory insider is not entitled to withhold information regarding its finances based on claims of financial privacy.  Despite Debtor's current efforts to distance himself from Great American, he told this Court in sworn filings that he was its president at the time of the bankruptcy filing.  The fact that he put the company's shares in the name of his son long before he was of age to participate in its affairs demonstrates that, far from being an unrelated third party, it is one more enterprise that Debtor used to segment and hide his own assets.
- Request No. 29: "All DOCUMENTS relating to wine sold by YOU labeled as "Chateau Julien" on or after January 1, 2011."  Great American has agreed to produce only those responsive documents reflecting wine sold to Chateau Julien, Inc.  That response is plainly insufficient and obviously intended to hide the fact that, since Chateau Julien, Inc. ceased operations, Great American has taken over Chateau Julien, Inc.'s old customers and business without compensating it.

Subpoenas, like all discovery, are subject to the relevancy standard of Federal Rule of Civil Procedure 26(b) which provides that, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." While the relevance inquiry under 26(b) involves a balancing of the interests in disclosure versus non-disclosure, the Subpoenas here request documents that are critically relevant to the Bank's claims regarding Debtor's misrepresentations to the Bank regarding Chateau Julien, Inc. as well as Debtor's representations concerning his interest (or alleged lack thereof) in Great American.  *See Valdez v. Travelers Indem. Co. of Conn.*, 2013 U.S. Dist. LEXIS 109154 at *17 (N.D. Cal. Aug. 2, 2013).  Where a party and his related entities' finances are at issue, as they are in this bankruptcy proceeding, broad financial discovery from those related entities, including but not limited to financial records, tax returns, profit and loss statements, bank account statements and information regarding ownership, assets, and cash flow of the company, should be permitted. *See id*. at *8-10 and 27.

In this case, Debtor admits he was the President of Great American for over 30 years.  Now he says his son is the President, a transition made after Chateau Julien was in default on the Chateau Julien Loan.  Great American appears to have simply picked up where the now-defunct Chateau Julien left off, making and selling wine under the Chateau Julien name.  The Bank should be permitted broad discovery to further establish the scope of Debtor's misrepresentations to obtain the loan from the Bank, to test Debtor's assertions concerning his purported lack of interest in Great American and to investigate Great American's dealings with Chateau Julien, Inc. and other Debtor affiliates (both those currently known to the Bank and any others that may exist).

As noted above, the Bank requests that the Court order Great American to produce all documents responsive to Request Nos. 3, 8-10, 16-18, and 29 in Great American's possession, custody, or control within ten days.

Very truly yours,

*Steven Sacks*

Steven B. Sacks
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


SMRH:476887973.3

cc:   Elias Salameh, Esq.
      William Healy, Esq.