CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR
Robert Brower, Sr.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| In re:<br><br>ROBERT BROWER, SR.,<br><br>Debtor.<br><br>MUFG UNION BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BROWER, SR.,<br><br>Defendants. | Case No. 15-50801<br><br>CHAPTER 11<br><br><br><br>Adversary Proceeding<br><br>No. 15-05102<br><br>**TRIAL BRIEF OF DEFENDANT**<br><br>**ROBERT BROWER, SR.** |

ROBERT BROWER, SR. ("Brower" or "Defendant") submits the following trial brief.

**I. Introduction.**

This is an action by MUFG Union Bank, N.A. ("Plaintiff" and "Union Bank"), apparently on behalf of itself and its predecessors, against Robert Brower, Sr. ("Brower" or "Defendant") pursuant to 11 U.S.C. 523 (a)(2)(B) and 11 U.S.C. 727 (a)(3) relative to a personal guarantee of a loan issued to Chateau Julien, Inc., a 30 plus year business

relationship between Plaintiff and its predecessors and Brower, and the closing of Chateau Julien, Inc. Brower submits that this action is without merit, Plaintiff cannot establish the elements required by Section 523 (a)(2)(B) or 727 (a)(3), Plaintiff is using this action as leverage against Brower to enforce its state court judgment against his family members, his business associates, and third parties, and Brower is entitled to a judgment in his favor on both claims.

**II. Statement of Facts.**

In addition to the facts set forth in the Pretrial Conference Statement, which will not be repeated herein, Brower submits some basic factual background is appropriate so the court has an understanding of the various persons, entities, and issues which may be mentioned.

**A. Background.**

On November 8, 1980 Brower married Patricia Brower (then Hendrickson) in New Jersey. Immediately prior to their marriage, they executed and had notarized a pre-marital (aka pre-nuptial) agreement which provided that their respective property was and shall remain separate property.

In the early 1980s Brower moved to California. Brower and several other investors, including Patricia Brower as her separate property, formed Coastal Cypress Corporation ("Coastal") to purchase and own real property, namely 8890 & 8940 Carmel Valley Road, Carmel, California ("Property"). Brower owns a minority interest in Coastal as his separate property. Since at least 2012 Plaintiff has known that Brower was a minority shareholder of Coastal.

In the1980s Patricia Brower and W.B. Lindley formed Chateau Julien, Inc. to operate at the Property and until its closing in 2015 the company operated at the Property conducting retail sales, events, and tours. Chateau Julien, Inc. was not licensed to and did not 'manufacture' or 'make' wine. Brower was never a shareholder of Chateau Julien, Inc.

In the 1980s Brower formed Great American Wineries, Inc. ("GAW") which was licensed to 'manufacture' or 'make' wine. Until 2015 GAW operated at the Property. In 1987

Brower's shares in GAW were transferred to his son Robert S. Brower, Jr. ("Bobby Brower"). Since at least March 2011 Plaintiff has known of GAW's existence and that Brower did not own GAW.

**B. Loans and Guarantees.**

**1) Chateau Julien, Inc.**

Chateau Julien, Inc. was a borrower of Pacific Capital Bank, N.A. ("Pacific Capital"). Brower understands that Pacific Capital may have been purchased by Santa Barbara Bank & Trust, N.A. ("Santa Barbara Bank") and Santa Barbara Bank may have merged with Union Bank. Brower individually guaranteed a loan to Chateau Julien, Inc.

From the inception of the lending relationship until approximately late 2014 when Union Bank commenced litigation and stopped accepting payments, Chateau Julien, Inc. never missed a payment. Throughout the more than 30 year relationship, Chateau Julien, Inc. provided monthly financial statements, monthly borrowing base certificates, and various financial statements and tax returns, was subject to various audits and inspections, and was readily available for communications regarding its business operations. Throughout that same time period Brower provided Plaintiff and its predecessors with a balance sheet listing his assets and liabilities and those of his wife, tax returns, bank statements, and other information, Brower used the same general form of balance sheet, and, except for two minor inquiries in 2011 and 2012, Brower never received any inquiries regarding his personal assets or liabilities, his wife's personal assets or liabilities, his pre-nuptial agreement, his ownership interest Coastal, Chateau Julien, Inc., or other companies.

Neither Chateau Julien, Inc. nor Brower were ever told they had not provided requested information to Plaintiff or its predecessors.

**2) Coastal.**

Coastal was a borrower of Pacific Capital Bank, N.A. ("Pacific Capital"). Brower understands that Pacific Capital may have been purchased by Santa Barbara Bank & Trust, N.A. ("Santa Barbara Bank") and Santa Barbara Bank may have merged with Union

Bank. Brower individually guaranteed loans to Coastal.

From the inception of the lending relationship until approximately mid-2015 when the Property was sold Coastal never missed a loan payment. Throughout the more than 30 year relationship, Coastal provided financial statements and various financial statements and tax returns, was subject to various audits and inspections, and was readily available for communications regarding its business operations. Throughout that same time period Brower provided Plaintiff and its predecessors with a balance sheet listing his assets and liabilities and those of his wife, tax returns, bank statements, and other information, Brower used the same general form of balance sheet, and, except for two minor inquiries in 2011 and 2012, Brower never received any inquiries regarding his personal assets or liabilities, his wife's personal assets or liabilities, his pre-nuptial agreement, his ownership interest Coastal, Coastal, or other companies.

Neither Coastal nor Brower were ever told they had not provided requested information to Plaintiff or its predecessors.

### C. Sale of Coastal.

In 2015 Coastal sold the Property, paid Plaintiff, and extinguished Brower's related guaranty(ees). As part of the sale the Property had to be clear of tenants, including Chateau Julien, Inc. whose lease had expired, and all personal property of the tenants.

### D. Closure of Chateau Julien, Inc.

Because of the pending sale of the Property, lease termination, and lease holdover, in early 2015 Chateau Julien, Inc. was in need of a new business location. However, Chateau Julien, Inc. had its monies frozen by Plaintiff, did not have monies to move off the Property yet had to move off the Property to avoid further liability, and had two written requests to Plaintiff for a spending agreement and monies for storage denied. As a result Chateau Julien, Inc. closed.

Subsequently, a receiver was appointed for Chateau Julien, Inc., the receiver took control of the companies remaining assets, and either sold or abandoned those assets.

**E. Only Inquiries.**

Although Plaintiff's loan documents require borrower and guarantor to not provide requested information and documents, neither Plaintiff nor its predecessors, ever threatened to or invoked these loan provisions.

Although Chateau Julien, Inc., Coastal, and Brower provided Plaintiff and its predecessors with information and documents as requested or demanded, only twice in the more than 30 years did Plaintiff or its predecessors make any inquiries regarding Brower's assets, both inquiries were via email, Brower responded to each immediately, in response Brower confirmed his majority ownership interest in Coastal and the existence of GAW and his non-ownership of GAW.

**III. Legal Issues and Legal Authorities.**

**A. Pursuant to the Joint Pretrial Conference Statement There Are Two Legal Issues Before the Court.**

The Joint Pretrial Conference Statement (Doc#35) notes two legal issues before the court, namely[1]:

1) Whether Defendant's debt to Plaintiff is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) because Defendant's debt that was an extension, renewal, or refinancing was obtained by use of a statement in writing (I) that was materially false, (ii) respecting the Defendant's financial condition, (iii) on which Plaintiff and/or its predecessors reasonably relied, (iv) that Defendant made with intent to deceive, and (v) damage proximately resulted therefrom.

2) Whether Defendant should be denied a discharge under 11 U.S.C. §727(a)(3) because Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or

---

[1]The Pretrial Conference Statement supercedes the Complaint and the court's February 8, 2017 Docket Entry notes "Pursuant to the parties' Joint Pre-Trial Conference Statement the issues to be litigated are Plaintiff's claims pursuant to 11 U.S.C. sections 523(a)(2)(B) and 727(a)(3). All other claims asserted in the complaint or answer are abandoned."

**TRIAL BRIEF OF DEFENDANT ROBERT BROWER, SR.**
5

preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

**B. The Applicable Law.**

The law provides several basic principals relative to the legal issues before the court.

### 1) Introduction.

The fundamental policy of bankruptcy law is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Lockerby v. Sierra (9th Cir. 2008 535 F.3d. 1038, 1042 (quoting from Local Loan Co. V. Hunt (1934) 292 U.S. 234, 244).

The statutory right to a discharge should ordinarily be construed liberally in favor of the debtor and strictly against the objector. In re Devers (9th Cir. 1985) 759 F.2d 751, 754; Matter of Vickers (10th Cir. 1978) 577 F.2d 683, 687; In re Leichter (3rd Cir. 1952) 197 F.2d 955, 959, cert denied 344 U.S. 914 (1953); and Roberts v. W.P. Ford & Son, Inc. (4th Cir. 1948).

Denial of discharge is a harsh result . . . bankruptcy has its roots in equity. To get equity, one must do equity". In re Bernard (9th Cir. 1996) 96 F.3d 1279, 1282-1983.

The reasons for denying a discharge must be real and substantial, not merely technical and conjectural. Dilworth v. Boothe (5th Cir. 1934) 69 F.2d 621, 624.

### 2) Burden of Proof.

The burden of proof for any claim of nondischargeability under Section 523 lies with the plaintiff. Grogan v. Garner (1991) 498 U.S. 278, 286; Transamerica Comm. Fin. Corp. V. Littleton (In re Littleton) (9th Cir. 1991) 942 F. 2d 551, 554.

The same burden of proof rule applies in a Section 727 (a) action. Fed. R. Bankr. P. 4005.

### 3) Section 523 (a)(3)(B).

To except a debt from discharge under Section 523 (a)(2)(B) a creditor must prove

seven elements:

    (1) a representation of fact by the debtor,

    (2) that was material,

    (3) that the debtor knew at the time to be false,

    (4) that the debtor made with the intention of deceiving the creditor,

    (5) upon which the creditor relied,

    (6) that the creditor's reliance was reasonable, [and]

    (7) that damage proximately resulted from the representation.

Candland v. Ins. Co. of N. Am. (In re Candland) (9th Cir. 1996) 90 F.3d 1466, 1469.

Although each element of a Section 523 (a)(2)(B) claim is separate and distinct and is subject to a particular legal standard, a few of these legal standards relative to certain elements are worth noting.

Fraud must be shown by a preponderance of the evidence. Grogan v. Garner, 498 U.S. at 286. The debtor's fraudulent intent must be actual, rather than constructive. In re Adeeb (9th Cir. 1986) 787 F.2d 1339, 1342-43.

Further, a plaintiff must prove the element of reliance in order to show a material nexus between the alleged fraudulent act and the alleged victim's resulting damage or harm. (See Mayer v. Spanel Int'l Ltd. (In re Mayer) (7th Cir. 1995) 51 F.3d 670, 675-76); see also Field v. Mans (1995) 516 U.S. 59, 66 ("No one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase 'obtained by'"). A creditor cannot blindly rely on an alleged misrepresentation if the "slightest inspection" would have revealed the falsity of the alleged misrepresentation. Field v. Mans, 516 at 70.

Lastly, to establish the required element of damages under Section 523 (a)(2)(B) a plaintiff must establish that it suffered damages proximately resulting from the alleged misrepresentation. (Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman) (9th Cir. 2000) 234 F.3d 1081, 1085; and In re Kim (9th BAP 1994) 163 B.R. 157, 161).

    **4) Section 727 (a)(3).**

Section 727(a)(3) authorizes the court to deny a discharge when "the debtor has

concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case." The Ninth Circuit has held that Section 727(a)(3) exists so as "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." Lansdowne v. Cox (In re Cox) (9th Cir. 1994) 41 F.3d 1294, 1296 (quoting Meridian Bank v. Alten (3d Cir. 1992) 958 F.2d 1226, 1232.

Section 727(a)(3) requires a debtor to present "sufficient written evidence which will enable [the debtor's] creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva) (9th Cir. 2008) 550 F.3d 755,762. When evaluating the reasonableness of a debtor's alleged failure to maintain records, the court should consider the nature of the financial transaction at issue, whether they related to business or consumer transactions, and the debtor's level of sophistication in such financial matters. In re Hong Minh Tran (Bankr. S.D. Cal. 2012) 464 B.R. 885, 893.

Section 727(a)(3) "does not require absolute completeness in making or keeping records." Id. Instead, a debtor must only "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." Id. A debtor's "duty to keep records is measured by what is necessary to ascertain [his] financial status." Moffett v. Union Bank, 378 F.2d 10, 11 (9th Cir. 1967).

**IV. Plaintiff Cannot Establish Claims Against Brower Under Section 523 (a)(2)(B) or 727 (a)(3) and Brower is Entitled to a Judgment in His Favor on Both Claims.**

    **A. Brower Must Prevail on the Section 523 (a)(2)(B) Claim Because Plaintiff Cannot Establish the Required Elements.**

As to the Section 523 (a)(2)(B) claim Plaintiff asserts that Brower intentionally provided materially false and misleading written financial statements to the Union Bank and

its predecessors in connection with renewals, extensions, and refinancings of the loans, the financial statements were materially false written statements concerning the financial condition of Brower, the Union Bank reasonably relied on these statements in renewing, extending, and refinancing the loans, and Brower issued these financial statements with the intent to deceive the Union Bank and its predecessors.

The cause of action fails for many reasons, including but not to, Plaintiff cannot prove that Brower provided materially false or misleading written financial statements regarding Chateau Julien, Inc. which was not owned by Brower or regarding Brower in connection with renewals, extensions, and refinancings, that Union Bank or its predecessors relied on these statements in renewing, extending, and refinancing the loans, that Brower intended to deceive Union Bank and its predecessors, or that Union Bank was damaged in any amount.

Since the inception of Chateau Julien, Inc.'s relationship with Plaintiff and its predecessors and through late 2014 when Plaintiff commenced litigation against Chateau Julien, Inc. and Brower (approximately 30 years), Chateau Julien, Inc. provided monthly financial statements, monthly borrowing base certificates, and various financial statements and tax returns, was subject to various audits and inspections, and was readily available for communications regarding its business operations. Throughout that same time period Brower provided Plaintiff and its predecessors with a balance sheet listing his assets and liabilities and those of his wife, tax returns, bank statements, and other information, Brower used the same general form of balance sheet, and, except for one minor inquiry in early 2012, and never received any inquiries regarding his personal assets or liabilities, his wife's personal assets or liabilities, his pre-nuptial agreement, his ownership interest Coastal, Chateau Julien, Inc. or other companies. In early 2011 and 2012 Santa Barbara Bank made two email inquiries regarding Brower's ownership interest in Coastal and GAW which Brower promptly addressed by confirming that he did not own GAW and only held a minority interest in Coastal.

Throughout the 30 plus year relationship neither Union Bank nor its predecessors

objected to Brower's use of the informal balance sheet as opposed to a formal Personal Financial Statement form. While Plaintiff may now complain that it couldn't understand whether Brower's balance sheet referred to his personal separate property assets or liabilities, his wife's personal separate property assets and liabilities, and/or community property assets and liabilities, it always had that authority and privilege, and it wasn't until mid 2013 that Union Bank presented Brower with a formal Personal Financial Statement form. Although Brower did not use that form, that form doesn't address whether assets or liabilities are separate or community property or whether there is a pre-nuptial agreement.

**B. Brower Must Prevail on the Section 727 (A)(3) Claim Because Plaintiff Cannot Establish the Required Elements, Plaintiff has more than 30 Years of Financial Records, and the Actions of Chateau Julien, Inc. Were Justified under the Circumstances.**

As to the Section 727 (a)(3) Plaintiff asserts that Chateau Julien, Inc. failed to maintain some its business records. Neither Chateau Julien, Inc. nor Brower committed any act or omission from which the debtor's financial condition or business transactions might be ascertained and any act or omission relative to the books and records of Chateau Julien, Inc. were justified.

The cause of action fails for many reasons, including but not to, because Chateau Julien, Inc. and Brower provided Plaintiff with and Plaintiff has, from Chateau Julien, Inc., Brower, and other sources, mo re than 30 years of Chateau Julien, Inc.'s business records (from inception to closing), after closing and as part of the state court litigation Chateau Julien, Inc. provided additional financial records to Plaintiff and to Plaintiff's court appointed receiver, and Plaintiff subpoenaed Chateau Julien, Inc.'s business records from various third parties, including Chateau Julien, Inc.'s bank.

As Brower was not an owner, paid employee, or recipient of funds from Chateau Julien, Inc. Plaintiff cannot establish that debtor's financial condition or business transactions might be ascertained from the records of Chateau Julien, Inc.

Any acts or omissions of Chateau Julien, Inc. relative to its books and records were also justified because, in addition to the discussion above, Plaintiff had frozen Chateau Julien, Inc.'s monies, denied Chateau Julien, Inc.'s two written requests for a spending agreement and monies to store its books and records, and left Chateau Julien, Inc. without the funds necessary to move to a new location and/or secure storage. As Chateau Julien, Inc. was, at the time, already a holdover tenant, the sale of Coastal was contingent upon Chateau Julien, Inc.'s vacating the Coastal property, and it had already printed its general ledger and related financials, its acts or omissions were justified under the circumstances.

**V. Conclusion.**

Brower is entitled to a judgment in his favor on both the Section 523 (a)(2)(B) and Section 727 (a)(3) claims as the Plaintiff has not met its burden of proof on either claim.

Dated: February 10, 2017        By: /s/ William J. Healy
                                William J. Healy

**TRIAL BRIEF OF DEFENDANT ROBERT BROWER, SR.**
11

Case: 15-05119    Doc# 41    Filed: 02/10/17    Entered: 02/10/17 16:56:46    Page 11 of 11