**Entered on Docket
March 22, 2017**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed March 22, 2017

*M. Elaine Hammond* (signature)

_____
**M. Elaine Hammond
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>Robert S. Brower, Sr.,<br><br>    Debtor. | Case No. 15-50801<br>Chapter 11 |
| MUFG Union Bank, N.A.,<br>    Plaintiff.<br>v.<br>Robert Brower, Sr.,<br>    Defendant. | Adv. No. 15-05119<br><br>Date:   February 22, 2017<br>Time:   10:00 a.m.<br>Ctrm:   3020 (San Jose) |

## MEMORANDUM DECISION

Plaintiff MUFG Union Bank, N.A. (together with its relevant predecessors, the "Bank") seeks to have the obligation of Debtor Robert Brower, Sr. ("Brower") excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B) and Brower's discharge denied pursuant to § 727(a)(3). A trial on these matters was held on February 14, 15, and 22, 2017. For the reasons stated herein, I find Brower's debt to the Bank is exempted from discharge pursuant

1

to § 523(a)(2)(B) but that the Bank did not establish discharge should be denied pursuant to § 727(a)(3).

This court has jurisdiction pursuant to 28 U.S.C. § 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

Background

In 1982, Brower and his wife, Patricia Brower ("Patricia") established a wine estate in Monterey County, California. The assets and operations of their business venture were split between multiple privately-held corporations. For the purposes of this decision, the key entities are:

- Chateau Julien, Inc., ("Chateau Julien") entity responsible for wine sales, tours, and events at the wine estate.
- Coastal Cypress Corporation, ("Coastal Cypress") entity that owned the real property on which the wine estate was operated.
- Great American Wineries, Inc., ("GAW") entity responsible for producing, blending, and bottling wine.
- American Commercial Properties, Inc., ("American Commercial") entity that owned Brower's residence as of the period in dispute. Brower and Patricia rented the residence from American Commercial.

The Bank began its relationship with Chateau Julien in 1986. Around the same time, Coastal Cypress borrowed funds from the Bank to acquire the real property for the wine estate. Effective May 15, 2009, Chateau Julien entered into a Loan and Security Agreement with the Bank, along with an Amended and Restated Revolving Term Note in the principal amount of $4,850,000 (collectively, the "Loan"). Brower guaranteed the Loan pursuant to an Unlimited Guaranty he executed April 28, 2004 and his Reaffirmation of Guaranty of May 15, 2009 (collectively, the "Guaranty"). The Loan was subsequently extended in June 2011, modified in December 2011, extended in June 2012, modified in November 2012, amended in March 2013, and amended September 2013. Ultimately, the Loan was not paid in full by

Chateau Julien or Brower. Following litigation in Monterey County Superior Court, the Bank obtained a judgment against Chateau Julien of over $5.4 million. Brower's Guaranty extends to the judgment.

When the Bank sought to collect on its Guaranty, Brower asserted a significant portion of the assets included in his annual financial statements were Patricia's separate property.

<u>Section 523(a)(2)(B) – Debt exempted from discharge based upon materially false written statement of the debtor's financial condition</u>

Following its standard credit practices, the Bank prepared a credit authorization review of Chateau Julien and Brower in connection with the Loan in 2009, and for each subsequent modification and extension. The credit review included: (1) submission by the borrower, Chateau Julien, of a balance sheet and income and expense statement for the prior year, and (2) submission by Brower, as guarantor, of a balance sheet for the prior year. In support of his balance sheet Brower also submitted a balance sheet and income and expense statement for American Commercial, the entity that owned Brower's home. The Bank then incorporated this information into its internal Credit Authorization report used to review and determine whether the loan, extension, or modification should be approved.

Section 523(a)(2)(B) provides that a debt is nondischargeable if it is a debt for money, or an extension or renewal of credit, to the extent obtained by –

(B) use of a statement in writing –

(i) that is materially false;

(ii) respecting the debtor's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money or credit reasonably relied; and

(iv) that the debtor caused to be made with intent to deceive.

These elements must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The Ninth Circuit reworded the § 523(a)(2)(B) requirements as:

(1) A representation of fact by the debtor,

(2) That was material,

(3) That the debtor knew at the time to be false,

(4) That the debtor made with the intention of deceiving the creditor,

(5) Upon which the creditor relied,

(6) That the creditor's reliance was reasonable,

(7) That damage proximately resulted from the representation.

*Candland v. Ins. Co. of Am., (In re Candland)*, 90 F. 3d 1466, 1469 (9th Cir. 1996).

At trial, the parties established that Brower provided a written representation of fact regarding his financial condition in the form of an annual balance sheet. Each balance sheet included approximately $7 million in assets—70% of his stated net worth—that he now discloses are Patricia's separate property. Brower knew his balance sheets were requested by the Bank because he was guarantor of the Chateau Julien loan. The Bank increased the amount of the Chateau Julien loan, extended its term, and lost collection remedies as a result of Brower's statements regarding his financial condition. Thus, factors (1), (2), and (7) are satisfied.

*Factors (3) and (4) – Knowingly false with the intent to deceive*

"The scienter requirement for a fraudulent misrepresentation is established by showing 'either actual knowledge of the falsity of a statement, or reckless disregard for its truth . . .'" *Gertsch v. Johnson & Johnson, Fin. Corp., (In re Gertsch)*, 237 B.R. 160, 167 (9th Cir. B.A.P. 1999) (quoting *In re Houtman*, 568 F.2d 651, 656 (9th Cir. 1978)). "Intent to deceive can be inferred from the totality of the circumstances, including reckless disregard for the truth." *Id.* at 167-68.

When examined, Brower's financial statements establish a pattern of misrepresentations. For the restatement of loan effective May 15, 2009, Brower provided a balance sheet as of December 31, 2008 for Robert S. and Patricia Brower ("2008 Balance Sheet"). (Exhibit 10). The 2008 Balance Sheet is signed by both Robert and Patricia Brower, and provides a total net worth of $9,837,229. The bulk of their net worth is from equity

4

Case: 15-05119    Doc# 47    Filed: 03/22/17    Entered: 03/22/17 13:24:31    Page 4 of 10

interests in privately-held companies, including Chateau Julien and American Commercial. The 2008 Balance Sheet lists the value of the Browers' common stock interest in Chateau Julien as $2,505,030. A 2008 balance sheet for Chateau Julien was not provided at trial, however, this number matches the value placed on Chateau Julien in the April 15, 2009 Credit Authorization prepared by the Bank, based upon tax returns provided to the Bank. Similarly, the 2008 Balance Sheet lists American Commercial as having a stock value of $476,145. This is the exact value of American Commercial's 2008 capital stock, based on the American Commercial balance sheet also provided to the Bank by Brower. (Exhibit 119).

Balance sheets from following years mimic this pattern. The December 31, 2009 Robert S. and Patricia Brower Balance Sheet (the "2009 Balance Sheet") (Exhibit 11) is signed by both individuals. The 2009 Balance Sheet reflects a common stock interest of $2,506,060 in Chateau Julien and $476,145 in American Commercial. The Chateau Julien balance sheet (Exhibit 63) lists the exact same amount for total stockholders' equity as the 2009 Balance Sheet. And again, the American Commercial balance sheet (Exhibit 119) lists a capital stock value equal to that provided on the 2009 Balance Sheet. The Brower balance sheets for 2010 and 2011 correlate with the Chateau Julien and American Commercial 2010 and 2011 balance sheets in the same manner.

Yet, Brower now asserts:

- As to Chateau Julien, he is not a shareholder, and that Patricia owns 50% of the company with another individual, and
- As to American Commercial, he is not a shareholder as a result of his gifting to Patricia 100% of the company in 2000 as her separate property.

Brower contends that his balance sheets were not false because each balance sheet states that it is for both Brower and Patricia, and in addition, the Bank never inquired whether some of the assets were Patricia's separate property. In an attempt to address how Patricia's 50% interest in Chateau Julien is equal to 100% of the stated shareholder equity in the company, Brower raises the novel argument that since the Chateau Julien balance sheet does not take into consideration accumulated depreciation, the equity value should be doubled as

5

an adjustment. By doubling the shareholder value, and then taking 50% of it, he reaches a shareholder value exactly the same as on the balance sheet. The court is unfamiliar with this approach and the only evidence presented in support of it is Brower's testimony. Brower's testimony is not compelling, and is further undercut by his failure to consistently apply this valuation method. In contrast, no manipulation is required to determine Patricia's 100% interest in American Commercial—the capital stock value is merely carried over to the Brower balance sheets.

Additionally, the line item Brower chose to use as the equity value varies between the two companies. For Chateau Julien, total stockholders' equity equal to capital stock plus retained earnings is always used. This is in contrast with American Commercial, where capital stock is used for the equity value, without any reduction for retained earnings. The factor that remains consistent is that the Brower balance sheets reflect the greatest shareholder value possible based on the related company balance sheets.

Finally, there is no dispute that Brower knew that only he, and not Patricia, was a guarantor to the Bank. He provides no credible testimony for why her substantial separate assets were regularly included with his balance sheet without any further disclosure or notice.

Brower consistently overstated his assets by implying that his wife's separate property was his. He then skewed the disclosures to match the greatest value possible with the related financial statements of Chateau Julien and American Commercial. As such, it is clear that Brower either knowingly made these false statements or made them so recklessly as to act fraudulently.

*Factor (5) – Creditor's reliance*

Brower disputes that the Bank relied upon his personal balance sheets, arguing instead that this was a "check the box" requirement, requested merely as a formality. Two former Bank managers responsible for managing the Chateau Julien portfolio, Todd Stornetta and Roland Pascua, offered contrary testimony. Stornetta testified that the Bank typically required a personal guaranty of the business owner to provide additional protection on a small business loan. This was required in order to form an additional source for repayment, and to

ensure that the interests of the owner and company were aligned. The testimony of Pascua, and Brad Hall, the Bank's expert witness, are consistent. Further, the Credit Authorizations include "Recourse to Guarantor" as a tertiary source of repayment and include a specific statement of Brower's net worth based upon the balance sheet he provided. The testimony of Stornetta and Pascua is supported by the Credit Authorizations created and maintained by the Bank, and overall is more credible than Brower's testimony. Thus, I find the Bank relied on the balance sheets provided by Brower.

*Factor (6) – Creditors reliance was reasonable*

Brower contends that the Bank could not reasonably rely on the balance sheets as to his assets because it never inquired whether the joint balance sheet included separate assets of his wife. This position is not consistent with the law. The Ninth Circuit has recognized that assertions of fact about an individual's financial condition require little, if any, further review when they are presented to an entity considering a loan or other financial benefit to the individual. *See In re Candland*, 90 F.3d at 1471; *La Trattoria, Inc. v. Lansford (In re Lansford)*, 822 F.2d 902, 903 (9th Cir. 1987). Further, the Bank regularly audited Chateau Julien's inventory and visited its business premises. The image presented in these visits and in Brower's public representations that he was one of the proprietors of Chateau Julien Wine Estates, support the balance sheets' implication that he had an ownership interest in Chateau Julien.[1] The Bank's reliance was therefore reasonable.

Each of the six factors having been established, I find that Brower's obligation to the Bank for his guaranty of the Chateau Julien loan is exempted from discharge pursuant to § 523(a)(2)(B).

---

[1] Brower introduced evidence at trial that GAW, the owner of the permit issued by the Alcohol and Tobacco Tax and Trade Bureau, included in its authorized trade names numerous "Chateau Julien" entities. (Exhibits 232 and 233). Notably absent from these list of authorized trade names is "Chateau Julien Wine Estate," the name presented to the public for the Chateau Julien retail and special event operations.

7

Case: 15-05119    Doc# 47    Filed: 03/22/17    Entered: 03/22/17 13:24:31    Page 7 of 10

§ 727(a)(3) Denial of Discharge based on failure to maintain records

"In order to state a prima facie case under § 727(a)(3), [the Bank] must show (1) that [Brower] failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain Brower's financial condition and material business transactions." *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir. 1994). The Bank is not required to prove fraudulent intent. *See id.* at 1297. If the Bank makes this showing, the burden shifts to Brower to justify or provide a credible explanation for the failure or inadequacy. *See id.* at 1296–97 (Holding that the debtor must show more than that she did not comprehend the need for business records. "In such cases, the justification must indicate that because of unusual circumstances, the debtor was absolved from the duty to maintain records herself.")

The statute does not require absolute completeness in keeping records, but Brower must present sufficient written evidence to enable his creditors to reasonably ascertain his present financial condition and follow his transactions for a reasonable period in the past. *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008) (citations omitted). This exception to dischargeability is strictly construed in order to serve the purpose of giving debtors a fresh start. *Id.* (citing *Industrie Aeronautiche v. Kasler (Matter of Kasler),* 611 F.2d 308, 310 (9th Cir.1979)).

The parties do not dispute that Brower destroyed records of Chateau Julien following its sale. After the Bank moved to enforce its loan, Brower disposed of the books and records associated with company transactions. Specifically, Brower discarded credit card receipts, inventory reports, point of sale material, detail for accounts payable, and general stationary supplies. He emphasized that this information was incorporated into the general ledger and bank statements he retained. In addition, Brower discarded the Chateau Julien computers because he did not have adequate storage space and the hard drives were destroyed. He maintained that the hard drives were removed and destroyed to protect sensitive customer and employee data.

While the destruction of certain records is admitted, the Bank must also prove that Debtor's financial condition cannot be ascertained as a result of the destruction. The records

8

Case: 15-05119    Doc# 47    Filed: 03/22/17    Entered: 03/22/17 13:24:31    Page 8 of 10

need not be absolutely complete, but should be sufficient to ascertain Brower's financial condition and material business transactions.

Brower stresses that after wrapping up the company's affairs, he kept over thirty years of general ledgers, payroll records reaching one to two years back, at least six months of bank statements, copies of checks and teller receipts, insurance policies, and inventory reports. The question then is whether this information is enough.

Brower maintained significantly more than the debtors in *Cox*, where the debtor kept no financial records of businesses in which she had an interest. 41 F.3d at 1296; *see also In re Hussain*, 508 B.R. 417, 425 (B.A.P. 9th Cir. 2014) (Debtor's production of only tax returns was insufficient to inform a creditor as to the nature and quality of profits and expenditures). Unlike these cases, Brower kept records of importance that enabled Chateau Julien to file tax returns and the Bank to deduce Brower's financial condition. At trial, it was clear that the Bank's primary concern is the ability to identify transfers from Chateau Julien to Brower or other entities. Brower testified that these transactions can be reconstructed using the general ledger and bank records. Although it may be cumbersome, there is no evidence to the contrary. That said, the Bank did not meet its burden to establish a prima facie case for denial of discharge pursuant to § 727(a)(3).

Contemporaneous with entry of this memorandum decision, the court will enter judgment exempting the Bank's claim against Brower from discharge pursuant to § 523(a)(2)(B) but denying its request for relief pursuant to § 727(a)(3).

**END OF ORDER**

# COURT SERVICE LIST

**Via ECF:**

All ECF Recipients